**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| KARON R. ROBINSON, an individual, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 05-CV-727-GKF-FHM |
| ) | |
| CAVALRY PORTFOLIO SERVICES, LLC, a ) | |
| foreign limited liability co., ) | |
| ) | |
| Defendant. ) | |

### OPINION AND ORDER

Before the court is the Motion for Summary Judgment filed by defendant Cavalry Portfolio Services, LLC ("Cavalry") [Docket No. 27].

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, a court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Wolf v. Prudential Insurance Company of America*, 50 F.3d 793, 796 (10th Cir. 1995). The movant for summary judgment must meet the initial burden of showing the absence of a genuine issue of material fact, then the nonmovant bears the burden of pointing to specific facts in the record "showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Wolf*, 50 F.3d at 796.

In ruling on Cavalry's Motion for Summary Judgment, the court does not consider the evidentiary materials appended to Cavalry's reply brief. Were the court to consider the new

materials, the law would require that Robinson be given a reasonable opportunity to respond to the new materials. *Doebele v. Sprint*, 342 F.3d 1117, 1139, n. 13 (10th Cir. 2003).

Alleged Race Discrimination Based on Interracial Association

Cavalry's first proposition is that Robinson failed to properly plead a claim of race discrimination based on association.

Cavalry did not file a motion to dismiss. It answered the Complaint on January 10, 2006. Since Calvary raises its first proposition as part of a motion for summary judgment, the court may consider matters outside the pleadings submitted by the parties in connection with the motion.

Robinson is a white female. *See* Complaint, ¶¶ 2 and 13. She alleges that Cavalry engaged in conduct constituting illegal race discrimination. *See* Complaint, ¶¶ 11, 14, 15, 17 and 19. Although the Complaint does not use the term "association," it references Robinson's Charge of Discrimination filed with the Equal Employment Opportunity Commission ("EEOC"). In her Charge, which is before the court in connection with the Motion for Summary Judgment, Robinson states that she has "been discriminated against because of my race, by association with a Black Male (my interracial marriage)." The evidentiary materials submitted in connection with the motion make clear that Robinson adequately apprised Cavalry that her race discrimination claims were based on interracial association.[1]   Cavalry is not entitled to summary adjudication on its first proposition.

Exhaustion of Administrative Remedies

Cavalry's second proposition is that Robinson failed to exhaust her administrative remedies with regard to claims of unequal pay and failure to promote. A plaintiff must exhaust her administrative remedies before bringing suit under Title VII. *Aramburu v. The Boeing Co.*, 112

---

[1] Title VII protection has been extended to whites discriminated against because of interracial association. *See, e.g., Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick*, 173 F.3d 988, 994 (6th Cir. 1999).

F.3d 1398, 1409 (10th Cir.1997). Federal courts lack jurisdiction to entertain Title VII claims unless such claims were previously filed with the Equal Employment Opportunity Commission. *See Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 799 (10th Cir. 1997). Each discrete incident of discriminatory treatment constitutes its own "unlawful employment practice" for which administrative remedies must be exhausted. *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003).

Allegations of failure to promote do not appear in Robinson's Charge of Discrimination dated August 3, 2005. No express allegation of unequal pay appears in the Charge. The Charge does state, however, that "my commission rates were improperly reduced." Robinson contends that allegations she made on the EEOC's "General Intake Questionnaire" signed June 12, 2005, and received by the EEOC on July 1, 2005, and on her "Harassment Questionnaire" signed June 12, 2005, and received by the EEOC on July 1, 2005, should be considered in determining whether she exhausted her administrative remedies with regard to claims of unequal pay and failure to promote. Specifically, on the "General Intake Questionnaire," Robinson checked a box relating to a claim of Equal Pay discrimination, and alleged a "glass ceiling." On the "Harrassment Questionaire," Robinson alleged a glass ceiling.

In *Jones v. United Parcel Service, Inc.*, 411 F. Supp. 2d 1236 (D. Kan 2006), the United States District Court for the District of Kansas considered three factors to determine whether an intake questionnaire serves as a charge: (1) what plaintiff and EEOC personnel said to each other; (2) what the questionnaire indicated; and (3) how the EEOC responded to the questionnaire. In this case, the court has no evidence as to the first factor. As for the second factor, as in *Jones*, both the General Intake Questionnaire and the Harrassment Questionaire contain statements that "The

purpose of this questionnaire is to solicit information to enable the [EEOC] to avoid the intake of matters not within its jurisdiction. When this form constitutes the only timely written statement of alleged ... discrimination, the [EEOC] will, consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(b), consider it to be a sufficient charge of discrimination under the relevant statute(s)." As for the third factor, it does not appear that the EEOC sent Cavalry a copy of the intake questionnaires.[2] Rather, on July 18, 2005, the EEOC informed Cavalry that "[a]n unperfected charge has been received by the [EEOC]. The [EEOC] staff is working to perfect the formal writing of the charge. Upon completion of this writing, as regulation allow [sic], we will mail you a copy of the perfected charge."

As noted in *Jones*, the Tenth Circuit has clearly stated that a plaintiff should not be penalized for EEOC negligence in handling a claim. *Jones*, 411 F. Supp. 2d at 1250. In view of the fact that Robinson raised allegations of unequal pay and "glass ceiling" on her "unperfected charge[s] . . . received by the [EEOC]" which the "[EEOC] staff [used to work on] to perfect the formal writing of the charge," this court concludes that summary judgment should be denied as to this proposition.

Allegation of Constructive Discharge

In its third proposition, Cavalry contends that Robinson resigned her employment and that Robinson cannot establish she was constructively discharged. The issue is whether Robinson has pointed to any record evidence that would be sufficient for a jury to find she was constructively discharged by Cavalry. The court applies an objective standard to determine whether constructive discharge has occurred:

> Constructive discharge occurs when the employer by its illegal

---

[2] It does not appear that this court received copies of the intake questionniares until last month, March 2007.

> discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign. Essentially, a plaintiff must show that she had no other choice but to quit. The conditions of employment must be objectively intolerable; the plaintiff's subjective views of the situation are irrelevant.

*Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1325 (10th Cir. 2004). *See also, Hall v. United States Department of Labor*, 476 F.3d 847, 851 (10th Cir. 2007).

The court has reviewed the "diary" submitted by Robinson. [Docket No. 30-4, at 10 - 20]. Among the many allegations are the following: Robinson alleges she was moved directly behind her manager, Rhonda Bemore and that Bemore actively sabotoged her calls and work effort. Robinson alleges she was humiliated by being required to report for a disciplinary meeting in a glass room positioned in the center of the floor where all employees could see her. Robinson alleges that Bemore regularly screamed at her and treated her differently than others in terms of direct supervision and the requirements placed upon her in pursuing collections. Robinson alleges that collection documents she printed were intentionally placed in the recycle bin and that faxed documents signed by her customers were deliberately destroyed. Robinson alleges she was not given a sufficient number of collection accounts to succeed, inasmuch as each collector "should have 600 accounts" and that Cavalry allegedly assigned her only 100.

Robinson alleges that, following the foregoing alleged acts, she was told by an employee that Bemore called that employee and told her that Robinson would be quitting on the upcoming Friday. Robinson alleges that, on Friday, she was called into a meeting where she was interrogated about a rumor that she would be quitting that day. Robinson claims that a Mr. Shaw tried to force her to fill out an exit interview, stressing that she would be given a commission check that day. Robinson alleges that Shaw refused to accept her answer that she was not quitting and that, later that day,

Shaw again approached her and informed her that her husband had confirmed that she was quitting. Robinson alleges that she finally gave up.

Upon review of the record in the light most favorable to Robinson, the court concludes that the motion for summary judgment on defendant's third proposition of constructive discharge should be denied.

*Prima Facie* Case of Discrimination

Cavalry's fourth proposition is that Robinson cannot establish a *prima facie* case of discrimination. Upon review of the briefs and the facts in the light most favorable to the plaintiff, the court concludes that the motion should be denied with respect to this proposition.

Retaliation

Cavalry's fifth proposition is that Robinson cannot establish a *prima facie* case of retaliation. Cavalry contends that Robinson has not alleged a causal connection between her complaints about Mr. Torres and the adverse employment actions. Robinson states that she complained about Mr. Torres on October 21, 2004, and on November 2, 2004, was moved to a position directly behind her manager. Robinson recognizes that all employees were moved, but asserts that she was subjected to two moves – once with other employees and again after her complaints to a position directly behind her manager where the manager allegedly sabotaged her calls and work effort. The court concludes that Robinson has alleged a temporal proximity sufficient to raise a trial issue as to causal connection. *See O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) ("[a] causal connection may be shown by 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'"). The motion must be denied as to defendant's fifth proposition.

Pretext

In its sixth proposition, Cavalry contends that it has advanced legitimate non-discriminatory reasons for each of its actions and Robinson has not shown evidence of pretext. Based upon the specific arguments raised in the briefs and the factual disputes raised thereon by the plaintiff, the court concludes that the motion must be denied on this proposition.

Hostile Work Environment

For its seventh and final proposition, Cavalry contends that plaintiff's hostile work environment claim fails as a matter of law. To survive summary judgment on a racially hostile work environment claim, a plaintiff must show "that under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial or stemmed from racial animus." *Chavez v. New Mexico*, 397 F.3d 826, 831-32 (10th Cir. 2005), *quoting Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994). There is no "mathematically precise test" to determine whether an environment is hostile or abusive, but some factors that may be considered include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23. "[F]acially neutral abusive conduct may support a finding of [racial] animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly [racially-discriminatory] conduct." *Chavez*, 397 F.3d at 833 (quoting *O'Shea v. Yellow Technology Servs., Inc*, 185 F.3d 1093, 1097 (10th Cir. 1999) (addressing alleged gender discrimination)).

Upon review of the evidentiary materials submitted by the plaintiff, including but not limited

to evidence related to comments allegedly made by Mark Torres, Rhonda Bemore, Mike Madewell and Kevin Hanlin, the court concludes that Cavalry's motion must be denied in this regard.

WHEREFORE, the Motion for Summary Judgment filed by defendant Cavalry Portfolio Services, LLC is denied.

IT IS SO ORDERED this 5th day of April 2007.

*Gregory K. Frizzell*
Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma